UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CAROLYN WARE, | Case No. 2:16-CV-135 JCM (CWH) |
| Plaintiff(s), | ORDER |
| v. | |
| NBC NEVADA MERCHANTS, INC., | |
| Defendant(s). | |

Presently before the court is defendant NBC Nevada Merchants Inc.'s motion to dismiss.[1] (ECF No. 9). Plaintiff Carolyn Ware filed a response in opposition, (ECF No. 13) and defendant replied (ECF No. 19).

**I.     Background**

This case concerns defendant's alleged racial discrimination, a potential violation of Title VII, while working for defendant. (ECF No. 1). Plaintiff asserts a cause of action against defendant for racial discrimination under Title VII. (*Id.*).

Plaintiff is an African-American female who was hired as a merchandise controller working for defendant at a TJ Maxx Warehouse. (*Id.*). Plaintiff had experience working as a supervisor at Wal-Mart. (*Id.*). She applied for employment with defendant in July 2009, seeking the position of AOM.[2] AOM was the "highest" position that plaintiff applied for, followed by the supervisor position. (*Id.*). Plaintiff was hoping to receive a position as an AOM or supervisor; however, she was hired in a "lower" position as a merchandise controller. (*Id.*). Plaintiff alleges that she was paid less in as a merchandise controller than she would have been in the two superior positions. (*Id.*).

---

[1] Defendant does business as Marmaxx Las Vegas Distribution Center. (ECF No. 9).

[2] It is unclear from the filings what the term "AOM" represents. (ECF Nos. 1, 9, 13, 19).

**James C. Mahan**
**U.S. District Judge**

Plaintiff asserts that her supervisor, a white female in the position of AOM, asked her to fire four minority employees with no justification. (*Id*.). She further asserts that she had a satisfactory job evaluation until she refused to fire the minority employees, at which time her evaluations soured. (*Id*.). Plaintiff and other minority employees were allegedly denied overtime, which was purportedly given to a white employee. (*Id*.). Plaintiff states that she complained to her supervisor's superior that plaintiff felt that she was a victim of discrimination. (*Id*.).

In August and September of 2013, defendant hired two new Caucasian supervisors. (*Id*.). They both had experience as supervisors at Wal-Mart in positions subordinate to the supervisory position plaintiff held while at Wal-Mart. (*Id*.). Further, plaintiff claims that while she was on medical leave in March 2014, a white employee was promoted from her department. (*Id*.). According to plaintiff, she never received notice of the open position. (*Id*.). Plaintiff alleges that, as a result of the white employee receiving the promotion, her supervisor moved plaintiff's shift. (*Id.*). Plaintiff contends that her hours decreased from forty hours to thirty-six hours per week and that she lost her shift differential due to her supervisor's shift adjustment. (*Id.*).

On July 10, 2014, plaintiff's supervisor gave plaintiff a birthday card and allegedly made plaintiff open the card in front of her. (*Id*.). The birthday card had monkeys on the front, which plaintiff asserts made her uncomfortable due to her previous experiences with her supervisor. (*Id*.). Plaintiff's supervisor reportedly told plaintiff that she gave her a card with monkeys on the front because "it's a zoo here." (*Id*. at 3).

Plaintiff filed her Nevada Equal Rights Commission ("NERC") complaint in December 2014. (*Id*.). After the investigation began, plaintiff says her supervisor asked who plaintiff had been speaking with and told her that she should leave if she did not like the way things were done at the store location. (*Id*.). Plaintiff's supervisor and her assistant allegedly told other employees that they were not to speak with plaintiff. (*Id*.). In April 2015, plaintiff's supervisor wrote in plaintiff's evaluation that she "needs to get all of the facts before reacting." (*Id.* at 4). Plaintiff believes this statement was a response to the NERC complaint she filed against defendant. (*Id*.).

Plaintiff claims that defendant later hired an outside security company and that a security officer thereafter would follow plaintiff and watch her every move. (*Id*.). Plaintiff asked a security officer who was monitoring her and following her around the warehouse for that security officer's name and badge number. (*Id*.) Plaintiff then reported what she perceived to be the aggressive and

**James C. Mahan
U.S. District Judge**

- 2 -

harassing behavior of the security officer to two individuals.[3]  (*Id*.).  After plaintiff's complaint regarding the security officer, plaintiff was told that she was going to be "writ[ten] up" for verbal[ly] attack[ing] the security officer.[4]  (*Id.* at 4.).

Defendant seeks to dismiss plaintiff's complaint for failure to timely exhaust administrative remedies or because it is implausible.  (ECF No. 9).  Plaintiff responded by arguing that she asserted the elements of a discrimination claim and that she exhausted claims involving harassing conduct and disparate treatment in her original charge of discrimination.  (ECF No. 13).  Defendant replied that plaintiff's failure to exhaust administrative remedies and the implausibility of a racial discrimination claim based on an allegedly racially offensive birthday card and security following plaintiff require the court to dismiss plaintiff's complaint.  (ECF No. 19).

**II.     Legal Standard**

The court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although Rule 8 does not require "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

A complaint must state plausible claims.  *Id.* at 679.  For a claim to be plausible on its face it must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id* at 678.  If a complaint merely has "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," it does not meet the requirements for plausibility.  *Id*.

In *Iqbal,* the Supreme Court clarified the two-step approach district courts are to apply when considering a motion to dismiss.  *Id.* at 678–679.  First, the court must accept as true all of the allegations contained in a complaint.  *Id*. at 678.  However, this requirement is inapplicable to

---

[3] The individuals' relationship to plaintiff is unclear.  (ECF No. 1).

[4] Plaintiff's complaint alleges that "[David Douglas and Belinda Alexander] were going to write Ms. Ware up for the 'verbal attack' of asking the security officer her name and badge number."  (ECF No. 1 at 4).  It is unclear from the party filings what being "written up" entails.

legal conclusions. *Id.* at 680. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 678. When the allegations in a complaint have not crossed "the line from conceivable to plausible, [plaintiff's] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court held,

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

### III. Discussion

#### a. Exhaustion of Administrative Remedies

Defendant seeks to dismiss plaintiff's first cause of action for being barred due to a failure to timely exhaust administrative remedies. (ECF No. 9).

Plaintiffs must file a charge with the Equal Employment Opportunity Commission, ("EEOC") or the proper state agency, to exhaust their administrative remedies under Title VII. *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1099 (9th Cir. 2002); *see also* 42 U.S.C § 2000e-5(b). If a state agency has a work-sharing agreement with the EEOC, the state agency is an agent of the EEOC for the purpose of receiving charges.[5] *Green v. Los Angeles City Superintendent of Schs.*, 883 F.2d 1472, 1476 (9th Cir. 1989). Work-sharing agreements function to constructively file charges with both agencies at once, thus exhausting a plaintiff's administrative remedies. *See McConnell v. Gen. Tel. Co. of California,* 814 F.2d 1311, 1315–16 (9th Cir. 1987); *see also* 29 C.F.R. § 1626.10(c). The purpose of bringing an EEOC charge before pursuing litigation is to give "the charged party notice of the claim and narrow . . . the issues for prompt adjudication and decision." *B.K.B.*, 276 F.3d at 1099 (internal quotations omitted). This reporting requirement also

---

[5] Nevada and the EEOC appear to have a work-sharing agreement, evidenced by the charge of discrimination form plaintiff filed with the Nevada Equal Rights Commission ("NERC"). This form states "I want this charge filed with both the EEOC and the State or local Agency . . . ." (ECF No. 9-1). The same form also had a box marked clearly indicating that the charge was presented to the EEOC. *Id.* From this record, it is apparent that plaintiff concurrently filed her charge of discrimination with the NERC and the EEOC. Thus, plaintiff's charge of discrimination is a charge of discrimination submitted to both the EEOC and the NERC.

James C. Mahan
U.S. District Judge

- 4 -

gives the agency notice and an opportunity to investigate the alleged charges of the claim. *Id.* "The jurisdictional scope of a Title VII claimant's court action depends upon the scope of both the EEOC charge and the EEOC investigation." *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990).

A court may find that plaintiffs have properly exhausted their administrative remedies if the new claims are "like or reasonably related to the allegations contained in the EEOC charge." *Green*, 883 F.2d at 1475–76 (quoting *Brown v. Puget Sound Elec. Apprenticeship and Training Trust*, 732 F.2d 726, 729 (9th Cir. 1984)). "Subject matter jurisdiction extends over all allegations of discrimination that either 'fell within the scope of the EEOC's *actual* investigation or an EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination.'" *B.K.B.*, 276 F.3d at 1100 (quoting *E.E.O.C. v. Farmer Bros. Co.,* 31 F.3d 891, 899 (9th Cir. 1994) (emphasis in the original)). When new claims in federal court that have not been included in the EEOC charge of discrimination "are consistent with the plaintiff's original theory of the case," then "the court should consider plaintiff's civil claims to be reasonably related" to the original charges. *Id.*; *see also Farmer Bros. Co.,* 31 F.3d at 899.

Here, plaintiff alleges that defendant violated Title VII and subjected plaintiff to racial discrimination on numerous occasions. (ECF No. 1). As an initial matter, plaintiff's charge of discrimination filed with the NERC served to constructively file the charge with the EEOC. The form plaintiff filed with the NERC states "I want this charge filed with both the EEOC and the [s]tate or local [a]gency . . . ." (ECF No. 9-1 at 2). Additionally, there is a portion of the form that states: "[c]harges [p]resented [t]o" above two checked boxes, one titled "FEPA" and one titled "EEOC." (*Id.*). Plaintiff's charge of discrimination was filed on a form titled "EEOC Form 5 (11/09)." (*Id.*). The form indicates, by a marked box, that the EEOC also received the charge. (*Id.*) Thus, the NERC form plaintiff filed evinces that both entities received the charge of discrimination, so plaintiff's state charge is therefore constructively filed with the EEOC. *See McConnell*, 814 F.2d at 1315–16. Accordingly, plaintiff's charge of discrimination will be referenced as an EEOC charge for purposes of this order.

Plaintiff checked the box indicating racial discrimination in her charge of discrimination form. (ECF No. 9-1). She indicated a date range of "7-10-2014" through "12-14-2014" for when the racial discrimination occurred but failed to mark the box labeled "continuing action." (ECF No. 9-1 at 2). Additionally, plaintiff asserted two claims in her charge of discrimination: (1) harassment; and (2) disparate terms and conditions. (*Id.*). She asserted these claims based on the

alleged incident involving the birthday card and the private security guard purportedly closely monitoring her actions. (*Id.*)

Plaintiff alleges facts in her present complaint that were not in her original charge. (*See* ECF Nos. 1, 9-1). Assuming *arguendo* that the new facts alleged would give rise to new claims, the court must determine if the new claims have been properly exhausted.

Plaintiff asserts the following new claims arising from defendant's actions: (1) hiring two Caucasian employees with lesser qualifications into supervisor positions without giving a her similar opportunity; (2) giving Caucasian employees overtime while denying the same to minority employees, including plaintiff; and (3) creating a hostile work environment for plaintiff after she submitted her NERC and EEOC complaints.[6]

The claims plaintiff asserts are not "like or reasonably related to the allegations contained in the EEOC charge." *See Brown,* 732 F.2d at 729. When charges are reasonably related, "additional investigative and conciliative efforts would be redundant." *Id.* at 730. This policy exists because "[w]here claims are *not* so closely related that agency action would be redundant, the EEOC must be afforded an opportunity to consider disputes before federal suits are initiated." *Id.* (emphasis in the original).

The claims plaintiff asserted in her original charge of discrimination were: (1) harassment for an allegedly racially insensitive birthday card; and (2) disparate terms and conditions as a result of private security monitoring plaintiff's actions. (ECF No. 9-1). Racially discriminatory practices in hiring and allocating overtime would not reasonably be uncovered in an investigation surrounding an allegedly offensive birthday card and the security monitoring of plaintiff. Thus, additional investigative and conciliatory efforts would be needed to exhaust these claims and give the EEOC the opportunity to properly consider the disputes. *See Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 638–39 (9th Cir. 2002). ("[Plaintiff's] failure to support an inference of either a series of related acts or a pattern or practice of discriminatory conduct precludes him from successfully asserting that his EEOC charge is related to his First Amended Complaint under the continuing violation theory.")

The relationship between plaintiff's theory of the case in her original EEOC charge and the new theory of the case in plaintiff's complaint is insufficiently substantial to find plaintiff's new

---

[6] The court finds that the third claim for a hostile work environment is exhausted, as will be discussed later.

James C. Mahan
U.S. District Judge

- 6 -

additional claims exhausted. The Ninth Circuit found that when new claims that are not included in the EEOC charge of discrimination are consistent with the plaintiff's original theory of the case, the court should consider plaintiff's civil claims to be reasonably related to the original charges. *See Farmer Bros. Co.,* 31 F.3d at 899. In *Farmer Bros. Co.*, that plaintiff outlined an unambiguous, comprehensive theory of the case that defendant aimed to remove women from the workforce by firing men and women in equal numbers and then rehiring only the men. *Id.* The plaintiff in that case allegedly brought a new claim relating to discriminatory layoff practices in her complaint. *Id.* The court reasoned that "because the layoff was an integral part of Farmer Bros.'s discriminatory scheme, it was reasonably related to Estrada's charge of discriminatory failure to recall or to rehire." *Id.* Therefore, that plaintiff was able to connect the new claim to her original theory of the case because it was part of a detailed and unambiguously alleged discriminatory plot. *Id.* Thus, that plaintiff exhausted her new claim despite her failure to traditionally exhaust her administrative remedies. *Id.*

Here, plaintiff's theory of the case is not as detailed. Rather, plaintiff's theory of the case is that she was discriminated against because she is African-American. (ECF No. 1). The relationship between plaintiff's additional claims and her theory of the case is attenuated. While the new claims fall under a broad theory of racial discrimination, there is no substantive connection between plaintiff's new claims and her exhausted claims analogous to the unified scheme in *Farmer Bros. Co.* 31 F.3d at 899. Thus, it would be improper to find that, because plaintiff alleges that she was a victim of racial discrimination in her original EEOC charge and makes new claims supporting the same broad theory, plaintiff has exhausted her administrative remedies. Indeed, plaintiff has not shown a scheme or alternative comprehensive theory of her case warranting the override of administrative exhaustion.

Finally, to determine whether plaintiff administratively exhausted her new claims and whether the court properly has jurisdiction over the matter, the court must decide if plaintiff's new claims could reasonably be expected to grow from the original EEOC investigation. *See Sosa*, 920 F.2d at 1456–59 (noting that jurisdiction can be expanded to include claims that are "like or reasonably related to the allegations contained in the EEOC charge." (quoting *Brown,* 732 F.2d at 729)). Allegations occurring outside of the original EEOC charge that are so closely related to those within the charge that one either necessarily follows the other or caused the other to occur may reasonably be expected to grow out of the charge of discrimination. *See, e.g.*, *Sosa* 920 F.2d

**James C. Mahan**
**U.S. District Judge**

- 7 -

at 1457 (finding where plaintiff was a professor and alleged in his EEOC charge, *inter alia*, "an underlying complaint of disparate treatment in the terms and conditions of his employment because of his national origin[,] [plaintiff's] claim of unequal pay may therefore be reasonably related to his EEOC charge.")  As discussed above, new claims of racial discrimination would not have been uncovered by the EEOC's original investigation.

Here, racially discriminatory hiring practices and a failure to grant minorities overtime are insufficiently related to the original charges of harassment and disparate terms and conditions specifically alleged to have resulted from a private security officer monitoring plaintiff.  Plaintiff's exhausted claim involves a disparate term or condition arising from private security monitoring plaintiff.  (ECF Nos. 1, 9-1).

In contrast, plaintiff's new claims involve disparate terms or conditions involving work assignments—position status and hours.  (*Id*.).  It does not necessarily follow that, because plaintiff was monitored closely by security, she was not hired or given overtime hours, or vice versa.  Thus, while both the new claims and the original claims may involve "disparate terms and conditions," they are not sufficiently similar enough to justify a finding that the new claim could be reasonably expected to grow from the original EEOC investigation.  *See Green*, 883 F.2d at 1476 ("[Plaintiff's] EEOC charge is directed solely at conduct which took place while she was still actually working . . . . [Further, plaintiff's] claim that [defendant] discriminatorily denied her medical leave and benefits, disseminated poor recommendations, and discharged her" do not share a relationship with the original claims warranting constructive exhaustion.)

Plaintiff's new hostile work environment claim is administratively exhausted because it is like or reasonably related to the allegations contained in the EEOC, and it can reasonably be expected to grow out of the charge of discrimination.  *See, e.g.*, *Sosa,* 920 F.2d at 1457.  As pleaded by plaintiff, a hostile work environment may have arisen as a result of her discrimination charge filing.  (ECF No. 1).  This situation is analogous to *Sosa*, where it necessarily followed that a new claim that the board of trustees was censuring Sosa arose from his original complaint alleging that "[a]dministrators[] have engaged in a pattern and practice of retaliating against [plaintiff] . . . ." *Sosa*, 920 F.2d at 1457.  The Ninth Circuit found that, because Sosa had indicated a continuing violation, claims outside of the EEOC charge involving retaliation were necessarily exhausted by the original EEOC charge of discrimination.  *Id*. at 1457–58.

Here, plaintiff's hostile work environment claim allegedly arose after she filed a discrimination complaint with the EEOC. Consequently, when viewed in the light most favorable to plaintiff, the hostile work environment claim could be deemed to be "like or reasonably related to the allegations" in the EEOC submission or it could "reasonably be expected to [have] grow[n] out of the charge of discrimination" because it could have involved retaliation. *See, e.g.*, *id.* Therefore, plaintiff's new hostile work environment claim can be deemed administratively exhausted for the purposes of this motion to dismiss.

For plaintiff's hostile work environment claim, the court will examine the following new facts alleged in plaintiff's complaint: (1) plaintiff being told by her supervisor, "[i]f you don't like the way we do things, you should just leave"; (2) plaintiff's evaluation stating that she "needs to get all of the facts before reacting"; and (3) plaintiff's supervisor following her so closely during lunch that they almost collided. (ECF No. 1 at 4).

While plaintiff does allege additional facts that could support a hostile work environment claim, plaintiff provides no clear indicia of how those facts fit in the chronology of events. (*Id*.). For example, plaintiff mentions being followed by an "outside" security officer in her complaint after listing the date she filed her EEOC complaint. (*Id*. at 4). This evinces a potential lack of chronological order to the facts alleged in plaintiff's complaint because plaintiff mentions in her EEOC charge that a private security officer followed her, stating that the issue began on October 1, 2014, (ECF 9-1 at 2) which is before she filed that charge in December 2014. (ECF No. 1 at 4). Thus, plaintiff has not clearly indicated in her complaint the specific timing of the relevant factual allegations. (*See id.*). Because administrative exhaustion is a critical issue in this case, this court will—in light of the indication of a possible temporal overlap—only consider for this claim those facts clearly dated, and therefore adequately alleged, as occurring after plaintiff filed her EEOC charge of discrimination.

Accordingly, the court finds that plaintiff failed to exhaust her administrative remedies relating to all new facts supporting a claim of racial discrimination except for those listed in the original EEOC charge and related to plaintiff's new hostile work environment claim, as enumerated above. Therefore, the additional facts in plaintiff's complaint are not properly before the court because the court does not have subject matter jurisdiction over these claims. *See Sosa*, 920 F.2d at 1456–59 ("Title VII claimants generally establish federal court jurisdiction by first exhausting their EEOC administrative remedies.").

**James C. Mahan**
**U.S. District Judge**

- 9 -

For these reasons, plaintiff's additional claims will be dismissed.

### b. Plausibility of Plaintiff's First Cause of Action

Further, defendant moves to dismiss plaintiff's claim of racial discrimination as implausible. (ECF No. 9). *See Iqbal*, 556 U.S. at 678–79 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Defendant asserts that plaintiff fails to establish a prima facie case of racial discrimination entitling her to relief because she did not allege that she was doing her job in a satisfactory manner or allege that an adverse employment action was taken against her. (ECF No. 9).

To establish a prima facie case of racial discrimination under Title VII, plaintiff must allege that she: "(1) . . . belongs to a class of persons protected by Title VII; (2) . . . performed . . . her job satisfactorily; (3) . . . suffered an adverse employment action; and (4) . . . [was] treated . . . differently than a similarly situated employee who does not belong to the same protected class as . . . plaintiff." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006). Plaintiff does not explicitly outline these elements within her complaint. (ECF No. 1). Therefore, the court evaluates the factual assertions in plaintiff's complaint to determine if they allege each of these elements.

First, defendant does not contest that plaintiff is a member of a protected class under Title VII and that she was treated differently from a similarly situated employee who was a member of a different race. (ECF No. 9).

Second, plaintiff must allege that she performed her job satisfactorily to satisfy the second element of a prima facie case of racial discrimination. Plaintiff only briefly discusses her job performance in her complaint. (ECF No. 1). She states that her first evaluation was normal, and that her evaluations deteriorated after her refusal to fire four minority employees allegedly without justification. (*Id.*). As discussed above, the only claims of racial discrimination properly before the court involve plaintiff receiving a racially insensitive birthday card, plaintiff being followed by private security, and those related to plaintiff's hostile work environment claim. Indeed, plaintiff fails to deny the "negative comments" or allege facts regarding her performance in her earlier evaluation and does not discuss her performance rating in her April 2015, evaluation. (*Id.* at 3). Therefore, plaintiff has failed to properly allege the second element of her Title VII claim.

James C. Mahan
U.S. District Judge

To properly plead a prima facie case of racial discrimination, plaintiff must also allege that she suffered an adverse employment action. "[A]n adverse employment action is one that 'materially affect[s] the compensation, terms, conditions, or privileges of . . . employment.'" *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (quoting *Chuang v. Univ. of Cal. Davis, Bd. of Trs.,* 225 F.3d 1115, 1126 (9th Cir. 2000)). In the retaliation context, an adverse employment action is "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1242–43 (9th Cir. 2000) (adopting the EEOC definition of "adverse employment action").

Currently, plaintiff has alleged that she received a racially insensitive birthday card, that she was closely monitored by a private security officer, and the facts supporting plaintiff's theory that a hostile work environment arose because she filed an EEOC complaint. (ECF No. 1).

Within the context of reviewable facts and the chronology of events in this case, receiving an offensive birthday card—by itself—does not materially affect plaintiff's compensation, terms, conditions, or privileges of employment, and plaintiff provides no factual allegations to the contrary. *See McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004) (recognizing that an isolated incident of offense is not, without more, actionable under Title VII).

Similarly, the allegation that a private security officer later followed plaintiff is not an adverse employment action as described in plaintiff's complaint. Plaintiff alleges that "a security officer would linger around [plaintiff] and watch her every move." (*Id*.). Plaintiff also alleges that after asking the security officer for her name and badge number to report the "aggressive and harassing behavior," plaintiff was told that she was going to be "written up" for the "verbal attack." (*Id*.). Plaintiff does not address how the specific terms or conditions of her employment were specifically affected by a private security officer following her and monitoring her movements. (*Id*.). Nor does plaintiff allege that any "write up" had an impact on her employment. Thus, plaintiff again fails to state that an adverse employment action resulted from defendant's alleged discrimination.

A hostile work environment is one where "the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . ." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations omitted) (internal quotation marks omitted),

**James C. Mahan**
**U.S. District Judge**

*abrogated on other grounds by Burlington Indus. Inc. v. Ellerth,* 524 U.S. 742 (1998). To pursue a hostile work environment claim pursuant to Title VII, an "objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citing *Harris*, 510 U.S. 21–22); *see also McGinest*, 360 F.3d at 1113.[7] The "prohibition [in Title VII against discrimination on the basis of race] encompasses the creation of a hostile work environment." *McGinest*, 360 F.3d at 1113. To determine if an environment is hostile or abusive, the court must look at all of the circumstances of the case. *Harris*, 510 U.S. at 23. The court "may . . . [examine] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being. . ." is relevant. *Id.* If a hostile work environment has been created, Title VII has been violated. *Id.* at 21–23.

Here, plaintiff alleges three facts that support her hostile work environment claim: (1) plaintiff being told by her supervisor that "[i]f you don't like the way we do things you should just leave"; (2) plaintiff's evaluation stating that "[plaintiff] needs to get all of the facts before reacting"; and (3) plaintiff's supervisor once following her so closely during lunch that at one point they almost collided. (ECF No. 1 at 4). These facts, taken under a totality of the circumstances seem neither objectively offensive to the degree that a reasonable person would find the environment hostile nor abusive. Similarly, the conduct as alleged does not seem severe or pervasive. This conduct is not physically threatening or humiliating from an objective standpoint, and it does not appear even to rise to the level of an "offensive utterance." *See Harris*, 510 U.S. at 23. Thus, plaintiff fails to allege a plausible hostile work environment claim because it does not "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See, e.g.*, *Iqbal*, 556 U.S. at 678–79.

In order to satisfy the plausibility requirement, "[t]he factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing

---

[7] While *Harris* involves a hostile work environment claim stemming from sexual harassment, the same factors are applied when dealing with a hostile work environment claim based upon racial discrimination. *See Harris*, 510 U.S. at 21–23; *McGinest*, 360 F.3d at 1112-13.

**James C. Mahan**
**U.S. District Judge**

party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. Plaintiff fails to plausibly suggest an entitlement to relief on her original racial discrimination claim because plaintiff did not properly allege the second and third elements of a prima facie case of racial discrimination under Title VII. Additionally, plaintiff's hostile work environment claim is implausible as it is pled because it does not allow the court to draw the inference that defendant is liable for creating a hostile work environment. Accordingly, the court will dismiss plaintiff's complaint without prejudice.

### IV.     Conclusion

Based on the foregoing, the court finds that plaintiff fails to meet her initial burden of pleading claims over which the court has subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) due to the unexhausted nature of plaintiff's additional claims in her complaint. *See Sosa*, 920 F.2d at 1456 ("Title VII claimants generally establish federal court jurisdiction by first exhausting their EEOC administrative remedies."). Plaintiff proves exhaustion only as to the two claims originally brought in her EEOC charge and her claim of a hostile work environment.

Further, the court also finds that plaintiff fails to meet her burden of pleading plausible claims upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) because she failed to assert facts which, taken as true, would establish a prima facie case of racial discrimination entitling plaintiff to relief. Additionally, plaintiff failed to assert reviewable facts in her complaint that would lead the court to a "reasonable inference that" defendant created a hostile work environment. *Iqbal*, 556 U.S. at 678.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant NBC Nevada Merchants Inc.'s motion to dismiss, (ECF No. 9) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that the plaintiff's complaint (ECF No. 1) be, and the same hereby is, DISMISSED without prejudice.

DATED November 30, 2016.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 13 -